**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

FREDERICK BLANCHETT, JR.,

        Plaintiff,

vs.                                       Case No. 3:08-cv-489-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Frederick Blanchett, Jr. ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for supplemental security income. His alleged inability to work is based on physical impairments involving his neck and lower back. See Transcript of Administrative Proceedings ("Tr.") at 84. Plaintiff was found not disabled by Administrative Law Judge ("ALJ") John D. Thompson, Jr., in a decision entered on January 31, 2008. Tr. at 15-22. Plaintiff has exhausted the available administrative remedies and the case is properly before the Court.

Plaintiff argues that the ALJ erred in "not fully developing and evaluating the reports of the treating and examining doctors[.]" Memorandum in Support of Complaint (Doc. No. 15; "Pl.'s Mem.") at 6 (emphasis and capitalization omitted). Although framed as one issue,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 11), and the Order of Reference was entered on August 6, 2008 (Doc. No. 12).

Plaintiff actually raises three: whether the ALJ articulated sufficient reasons supported by substantial evidence for discounting the opinions of treating physicians Dr. Hardin, Dr. Galiano, and radiologist Dr. Pentalari; whether the ALJ articulated sufficient reasons supported by substantial evidence for discounting the opinion of examining physician Dr. Choisser; and whether the ALJ neglected his duty to fully develop the record. Id. at 6-11. After thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the ALJ's decision is supported by substantial evidence. Therefore, the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff: 1) is currently employed; 2) has a severe impairment; 3) has an impairment that meets or medically equals one listed in the regulations; 4) can perform past relevant work; and 5) retains the ability to perform any work in the national economy. See 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The ALJ performed the required five-step sequential inquiry set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). At step one, the ALJ established Plaintiff has not engaged in substantial gainful activity since March 21, 2005 (the alleged onset date). Tr. at 17. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: "a history of cervical disc disease, well controlled non-insulin dependant diabetes, well controlled hypertension, well controlled hyperlipidemia and a history of alcohol abuse," along with "suffer[ing] from obesity." Tr. at 17 (emphasis omitted). At step three,

the ALJ stated Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 18. The ALJ determined Plaintiff has the residual functional capacity ("RFC") "to perform medium work except that he cannot climb ropes, scaffolds or ladders. He should perform no overhead work on more than an occasional basis and should not be required to crawl on more than an occasional basis." Tr. at 18 (emphasis omitted). At step four, the ALJ observed that Plaintiff is capable of performing his past relevant work as a "heavy equipment operator" as well as an auto body repairer and parts salvager. Tr. at 22. The ALJ concluded Plaintiff was not under a disability[2] from March 21, 2005 (the alleged onset date) through the date of the decision. Tr. at 22.

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v.

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

### A. Opinions of Treating Physicians Dr. Hardin and Dr. Galiano, and Radiologist Dr. Pentalari

Plaintiff contends the ALJ improperly discounted the opinions of Dr. Hardin and Dr. Galiano, and "accorded little weight to the radiologist, Dr. P[e]ntalari[.]" Pl.'s Mem. at 8. Plaintiff was involved in a motor vehicle accident on or about May 20, 2003. Tr. at 84, 165. Although he did not immediately seek medical attention, Plaintiff presented himself at Orange Park Medical Center on May 22, 2003 complaining of "back/neck pain." Tr. at 146. Plaintiff was told he had neck and back sprains, and was given a prescription for vicodin. Tr. at 153-55.

From May 29, 2003 through October 22, 2003, Plaintiff was treated for his pain by Dr. Hardin and Dr. Galiano. Tr. at 165-214. On June 16, 2003, at the request of Dr. Galiano, Plaintiff underwent an MRI of his cervical spine. Tr. at 201-02. Dr. Pentalari, the radiologist who read the MRI, opined that a "large right paracentral disc protrusion at C6-7 compresses the spinal cord and causes right-sided neural foraminal narrowing." Tr. at 201-02 (emphasis

and capitalization omitted). Also, Dr. Pentalari opined that a "small disc bulge at C5-6 on the right contacts the spinal cord and causes some mild neural foraminal narrowing." Tr. at 202 (emphasis and capitalization omitted). Plaintiff was treated by Dr. Galiano and Dr. Hardin with "conservative" physical therapy, primarily consisting of the application of moist heat, massage therapy, and electrical stimulation, until his final appointment on October 22, 2003. Tr. at 171, 165-214. Plaintiff alleges that during this treatment, it was documented that he had pain ranging from five to eight on a ten-point scale. Pl.'s Mem. at 7-8. Plaintiff argues that the ALJ "disregards the many notes from Drs. Hardin and Galiano that document the presence of pain[.]" Id.; see also Tr. at 174-212. During the course of the treatment, it was often documented that Plaintiff's range of motion in the cervical spine was "limited" (Tr. at 174, 185, 188, 197), "decreased" (Tr. at 176, 181, 182, 190, 198), "restricted" (Tr. at 178, 193), "reduced" (Tr. at 180, 187, 192, 195), and "diminished" (Tr. at 184, 191, 196, 199, 203), with corresponding pain.

The Social Security Administration has promulgated regulations instructing ALJs how to weigh the medical opinions[3] of treating physicians[4] properly. See 20 C.F.R. § 404.1527(d). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's

---

[3] Medical opinions are statements from physicians that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment. 20 C.F.R. § 404.1527(a)(2).

[4] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required the for the medical condition. See 20 C.F.R. § 404.1502.

medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004); see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The ALJ afforded "little weight" to the opinions of Dr. Galiano and Dr. Hardin "because their treatment of the claimant ended approximately a year and a half before the alleged onset date." Tr. at 21. The ALJ observed:

> There is not a great deal of medical evidence to support the claimant's allegation of total impairment. Dr. Galiano and Dr. Hardin's treatment records do not seem to indicate that the claimant's injury was extremely serious as they treated him only with conservative physical therapy and never referred him for any neurological or surgical consultation.

Tr. at 21. The ALJ was correct when he observed that there is a lack of medical evidence to support Plaintiff's allegations with respect to his back and neck injuries. The only treatment Plaintiff sought for these injuries was from Dr. Galiano and Dr. Hardin for about five months following his motor vehicle accident. Tr. at 165-214. The ALJ recognized that this short treatment ended approximately one and one-half years prior to Plaintiff's alleged onset date of disability. Tr. at 21. Plaintiff has not sought any additional treatment for these injuries. Plaintiff concedes that the opinions "were not current and may or may not present an accurate assessment of the plaintiff's condition." Pl.'s Mem. at 10. Further, although the doctors' respective medical records document decreased range of motion in the cervical spine, Tr. at 165-214, it is difficult to ascertain from reviewing the records how the decreased range of motion would affect Plaintiff's RFC. Last, even though the ALJ did not specifically comment on the documented pain during the course of this treatment, when summarizing the evidence, the ALJ noted "alleged neck pain, back pain and shoulder pain following a motor vehicle accident in 2003." Tr. at 19. Thus, it is evident the ALJ took Plaintiff's documented pain complaints into account when discounting the doctors' opinions. The ALJ's reasons for discounting the opinions of Dr. Galiano and Dr. Hardin constitute good

cause for the discounting of the respective opinions and are supported by substantial evidence.

Similarly, the ALJ afforded "little weight" to the opinion of Dr. Pentalari, explaining "his conclusions are not born [sic] out by the symptoms and clinical exams conducted on the claimant." Tr. at 21. The ALJ further relied on the testimony of a board certified neurosurgeon, Dr. Witkind, in discounting Dr. Pentalari's opinion:

> Dr. Pentalari's interpretation of MRI imaging performed on June 16, 2003 is questionable according to Dr. Witkind. This is because there are a lack of neurological symptoms that should be present if Dr. Pentalari's interpretation was correct. In any event, no follow up imaging studies were ever conducted to track the progress of any abnormalities so this evidence is of little value in determining the claimant's condition since March 21, 2005, the alleged onset date of disability.

Tr. at 21.

A review of the record reveals substantial evidence to support the ALJ's reasoning. Due to the lack of treatment documentation in the record, Plaintiff's first hearing before the ALJ was continued so Dr. Witkind could testify regarding his interpretation of the limited medical evidence to support Plaintiff's claim. Tr. at 326. During Plaintiff's second hearing before the ALJ, Dr. Witkind was asked whether Dr. Pentalari's reading of the June 16, 2003 MRI was "bourn out by clinical exam[.]" Tr. at 335. Dr. Witkind confirmed that although the reading would indicate significant problems in the cervical spine, the reading was not consistent with any clinical exam "because we don't really have a corresponding physical exam with a right paracentral dis[c] herniation." Tr. at 335. The ALJ also correctly recognized that Plaintiff did not have any follow up MRI imaging. Tr. at 21; see also Tr. at 335. Again, the ALJ noted that the opinion in June 2003 was "of little value" in assessing

Plaintiff's condition since the alleged onset date almost two years later. Tr. at 21. The ALJ's reasons for discounting the opinion of Dr. Pentalari constitute good cause to discount the opinion and are supported by substantial evidence.

### B. Opinion of Examining Physician Dr. Choisser

Plaintiff next contends the ALJ gave insufficient weight to the medical opinion of Dr. Choisser, an examining physician. Pl.'s Mem. at 9-11. Examining physicians' opinions are not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160. Nevertheless, an ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). The same criteria are used in evaluating medical opinions from treating and nontreating sources.[5] The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citing 20 C.F.R. § 404.1526 (1980)).

---

[5] "Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902.

The ALJ afforded "little weight" to Dr. Choisser's opinion. Tr. at 21. With respect to the length of the treatment relationship and the frequency of examination, the ALJ noted that Dr. Choisser examined Plaintiff on one date: July 7, 2005. Tr. at 19; see also Tr. at 223-223A. On that date, Dr. Choisser opined Plaintiff suffered from "[c]ervical spine disease, unresponsive to physical therapy" and "[l]umbar spine disease which could be more muscular, but is progressive in nature and which is complicated by obesity." Tr. at 223A. With respect to specialization, the ALJ noted Dr. Choisser "is not a spine specialist." Tr. at 21. With respect to supportability, the ALJ relied on the testimony of Dr. Witkind and concluded Dr. Choisser's "examination and opinion was not based on testing using accepted neurological standards. Also, his conclusions are so inconsistent as to provide no value in assessing the level of functional impairment suffered by the claimant." Tr. at 21.

A review of the record reveals substantial evidence to support the ALJ's reasoning. During the second hearing, the ALJ questioned Dr. Witkind about Dr. Choisser's report. Tr. at 336-37. After summarizing the report, the ALJ asked, "[I]s there some inconsistency in what I've just read?" Tr. at 336. Dr. Witkind responded, "Yeah, the exam doesn't make any sense." Tr. at 336. Dr. Choisser's reference to "[p]ulses and reflexes [being] 5/5 and equal in all 4 extremities" (Tr. at 223A) but "progressive weakness of his right upper extremity" (Tr. at 223A) was interpreted by Dr. Witkind to mean that Plaintiff was "complaining of a lot of pain and perhaps that's what's limiting him, but he doesn't have any abnormal reflexes." Tr. at 336-37. Dr. Witkind concluded, "[F]rankly I'm not sure he, he's very well trained in neurologic findings - - this [was a] rather bizarre exam." Tr. at 337. Finally, Dr. Witkind confirmed that no abnormal neurological deficits were documented in Plaintiff's subsequent

medical records. Tr. at 337. The reasons provided by the ALJ for discounting Dr. Choisser's opinion are supported by substantial evidence.

### C. The ALJ's Duty to Develop the Record

Plaintiff argues that the ALJ failed to adequately develop the record in that he did not refer Plaintiff to a spine specialist, even though the ALJ was concerned about the adequacy of Dr. Choisser's examination. Pl.'s Mem. at 9-11. The undersigned finds Plaintiff's argument unpersuasive.

"It is well-established that the ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." Ellison, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a); 20 C.F.R. § 416.912(c)). Plaintiff was represented by counsel during the proceedings before the ALJ. Cf. Osborn v. Barnhart, 194 F. App'x 654, 668-69 (11th Cir. 2006) (unpublished) (observing that the burden was on the claimant to establish disability and stating that there was no need for additional information or clarification because the ALJ's decision was supported by substantial evidence). Furthermore, as Defendant points out, the United States Court of Appeals for the Seventh Circuit has "squarely rejected the contention that the SSA regulations require the ALJ to 'update objective medical evidence to the time of [the] hearing.'" Memorandum in Support of the Commissioner's Decision (Doc. No. 17) at 7 (quoting Luna v. Shalala, 22 F.3d 687, 693 (7th Cir. 1994)). The undersigned finds persuasive the Seventh Circuit's holding in this regard.

Noting the lack of evidence from a "specialist" concerning Plaintiff's neck and back conditions, the ALJ continued the first hearing "to get some input from a neurosurgeon." Tr. at 324. When Plaintiff's counsel was asked if there was "[a]ny objection to proceeding the way [the ALJ] outlined," Plaintiff's counsel responded in the negative. Tr. at 326. Given the length of time that had passed between the last treatment for pain in Plaintiff's back and the alleged onset date of disability, combined with the ALJ's continuance of the hearing to obtain testimony from a specialist, the undersigned finds that the ALJ did not neglect his duty to develop the record. As substantial evidence supported the ALJ's decision, there was no need to obtain an additional evaluation. In any event, even if the ALJ had neglected to fully develop the record, Plaintiff has failed to point to any evidence which would show that he was prejudiced such that remand would be required. Cf. Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997) (when an ALJ had a "heightened duty" to develop the record because the claimant was not represented at her hearing, stating "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded. . . for further development of the record") (citing Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir. 1995)).

## V. Conclusion

The ALJ articulated adequate reasons for discounting the opinions of treating physicians Dr. Galiano and Dr. Hardin, and radiologist Dr. Pentalari. In addition, the ALJ's reasons are supported by substantial evidence. Moreover, the ALJ articulated sufficient reasons for discounting the opinion of examining physician Dr. Choisser, and those reasons similarly are supported by substantial evidence. Further, the ALJ did not neglect his duty

to develop the record. Finally, a review of the entire record indicates that the ALJ's decision is supported by substantial evidence.

In accordance with the foregoing, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's decision.

2. The Clerk of Court is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 10, 2009.

                                                                   /s/ James R. Klindt
                                                                    **JAMES R. KLINDT**
                                                                   United States Magistrate Judge

kaw

Copies to:

Counsel of Record